IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TERENCE HAWKINS, )
)
          Plaintiff, )     Case No. 21 C 04777
)
   v. )
)     Judge Robert W. Gettleman
CITY OF HARVEY, )
)
          Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Terence Hawkins worked as a police officer for the City of Harvey ("defendant" or the "City"). He filed this lawsuit against defendant, alleging that it denied him the opportunity to return to work after he injured his knee and then surreptitiously terminated him based on his age and injury. He asserted four counts in the operative second amended complaint: a claim under 42 U.S.C. § 1983 for violating his Due Process Rights under the Fourteenth Amendment (Count I); a Monell claim (Count II); a claim under 29 U.S.C § 621, et seq., for violating the Age Discrimination in Employment Act ("ADEA") (Count III); and a claim under 42 U.S.C. § 12101, et seq., for violating the Americans with Disabilities Act ("ADA") (Count IV). On March 20, 2025, the court granted plaintiff's motion for summary judgment as to liability on Counts I and II, denied defendant's cross-motion for summary judgment on those counts, and granted defendant's motion for summary judgment on Counts III and IV. See Hawkins v. City of Harvey, No. 21 C 04777, 2025 WL 875210 (N.D. Ill. Mar. 20, 2025). As to Counts I and II, the court found the plaintiff was denied due process because the undisputed facts showed that plaintiff received no notice, no statement of reasons, and no opportunity to be heard before he was terminated.

In the same order, the court directed the parties to suggest a procedure for determining damages and other relief on Counts I and II. Defendant has now filed a motion to "compel arbitration between the parties on whether there was just cause for Plaintiff's termination and the damages Plaintiff is entitled to for due process violations." Plaintiff opposes the motion. For the reasons below, the court denies defendant's motion.

## BACKGROUND

### Undisputed Facts from the Summary Judgment Ruling

Relevant here, in granting plaintiff summary judgment on Counts I and II, the court summarized the following undisputed facts. In 2008, defendant hired plaintiff as a patrolman for the Harvey Police Department. In May 2013, plaintiff was promoted to Civil Service Sergeant. In March 2018, plaintiff injured his left knee while on duty exiting his patrol car. He was thereafter placed on leave and received payment under the Illinois Public Employees Disability Act through the pay period ending on May 17, 2019.

In May 2019, the City's new administration performed a "ghost payroller audit"—under which the City departments were to instruct employees to pick up in person their next payroll check from the HR Department at City Hall. From the ghost payroll audit, the City's HR Director determined that several employees on the list were no longer working for the City and should be terminated from the payroll system—including plaintiff, who was being paid yet did not appear to have any remaining accrued benefit days left. At a meeting about ghost payrollers where the Mayor, the City Manager, and the HR Director were present, the Mayor approved the termination of plaintiff, and the HR Director managed the termination of 8 to 10 other City employees on the list. The City has admitted that plaintiff was terminated because he was

identified as one of the people being paid without working. His termination was effective June 2, 2019.

Plaintiff did not receive any notice that he was terminated, or that if he did not return to work, his job was at risk if he failed to pick up a payroll check on time. Nor did defendant have any pre-disciplinary meeting or hearing to discuss plaintiff's termination. In fact, plaintiff did not learn of his termination until February 2020.

As a member of the "Sworn Sergeants," plaintiff was covered under a collective bargaining agreement ("CBA") between the City and the Metropolitan Alliance of Police. The termination process listed in the CBA involves a pre-disciplinary meeting with the police department where the employee is presented with a list of charges, the employee will speak to those charges, and a decision will be made, if not through a civil service commission, then through arbitration, and finally, administrative review under the Illinois Administrative Review Law. During this time, the City did not maintain a civil service board, police board, or civil service commission that conducted hearings in connection with the termination of civil service employees.

### Procedural Events Through Summary Judgment

In September 2021, plaintiff filed a pro se complaint against defendant in federal court. After he filed an amended pro se complaint, Judge Norgle, to whom this case was previously assigned, recruited counsel to represent plaintiff. After the case was reassigned to this court, plaintiff's initial recruited counsel withdrew, and in June 2023, the court recruited attorney J. Mark Fisher of Schiff Hardin LLP to represent plaintiff.

3

In October 2023, plaintiff filed a second amended complaint, which included a § 1983 claim based on due process (Count I) and a Monell claim (Count II).   Defendant filed an answer to the second amended complaint in November 2023.

In August 2024, plaintiff moved for partial summary judgment on Counts I and II, as to both liability and damages.   In October 2024, defendant cross-moved for summary judgment on those same counts and on Counts III and IV.   Two rounds of briefing on summary judgment concluded in January 2025.   The court ruled on the motions on March 20, 2025.   See Hawkins, 2025 WL 875210, at *12.

As for the counts relevant to defendant's motion here—Count I (the § 1983 due process claim) and Count II (Monell)—the parties and the court agreed that both counts should be considered as one.   Id. at *4.   The court then explained that to succeed on his § 1983 claim against the City, plaintiff had to prove: (1) that he had suffered the deprivation of a constitutional right; and (2) that defendant's official custom or policy caused that deprivation.   Id.   On the first requirement, the court found: that plaintiff had a cognizable property interest in his continued employment; that he was deprived of that property interest because the defendant had admitted that the Mayor decided to terminate his employment with the City; and that he was denied due process because "[i]t [wa]s undisputed . . . that plaintiff received no notice, no statement of reasons, and no opportunity to be heard before he was terminated effective June 2, 2019."   Id. at *4-8.   As to the second requirement, the court found that defendant's official custom or policy caused the deprivation of due process, and thus gave rise to Monell liability.   See id. at *8-11.

4

The court therefore found that there were no genuine disputes of any material facts related to liability on the § 1983 <u>Monell</u> claim, and that plaintiff was entitled to judgment as a matter of law on that claim. <u>Id.</u> at *11. The court consequently granted summary judgment to plaintiff on Counts I and II as to liability, and directed the parties to suggest a procedure for determining damages and other relief. <u>Id.</u> at *12.

## DISCUSSION

Defendant has moved to compel arbitration to determine whether there was just cause for terminating plaintiff and what damages plaintiff is entitled to for due process violations. According to defendant, "[m]atters clearly intended to be arbitrated under a collective bargaining agreement must be arbitrated," and the CBA here clearly intended to arbitrate just cause. Plaintiff, defendant asserts, "was a member of the 'Sworn Sergeants' bargaining unit" that is covered by the CBA. Defendant contends that the CBA defines "grievance" as an "allegation by the Union or by an affected member that there has been a violation, misinterpretation or misapplication of any provision of this Agreement, or which involves any disciplinary action[.]" (Quoting § 6.1 of the CBA). And the CBA, defendant continues, further provides:

- "that Sergeants covered by the CBA were permitted to be disciplined, including discharged, if the discipline was for 'just cause'" (citing §§ 7.1 and 7.5);
- "[i]f discharge was recommended, 'the affected police officer shall have the right to have such action heard either before the Civil Service Commission or by a neutral arbitrator'" (quoting § 7.5); and
- "[w]ithin 10 days of receiving the recommendation of discharge, the police officer must select the venue" (citing <u>id.</u>).

Because there was no Civil Service Commission at the time, defendant argues, plaintiff would have had to go through a neutral arbitrator. And under § 7.5, defendant contends, that

means that plaintiff would have to "proceed directly to step 4 (arbitration) of the grievance procedure." (Citing id.).

Defendant also argues that "the only remedy Plaintiff is entitled to is the pre-deprivation due process which he would have been entitled to prior to his termination." As a result, defendant argues, plaintiff "is only entitled to" "arbitration before a neutral arbitrator to determine whether his termination was for just cause." Thus, defendant concludes, "the determination of whether Plaintiff was terminated for just cause needs to be determined by a neutral arbitrator, along with any accompanying damages, which will be largely determined on whether there was just cause for Plaintiff's termination in the first place."

Plaintiff responds, arguing that the court "retains and should exercise its authority to determine the just cause issue." In so arguing, he first contends that defendant waived its right to compel arbitration by delaying "nearly four years" before seeking to arbitrate, and doing so only after losing on "its own cross-motion for summary judgment on Counts I and II." He next argues that there is no presumption of arbitrability here because his rights arise from § 1983, not the CBA. (Citing Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 78-79 (1998)). In other words, he argues, his "claims are not a matter of mere contract interpretation, but . . . of Constitutional and statutory individual rights," and the "question" now "is the remedy," which, he asserts, "arise[s] from" § 1983 and the Fourteenth Amendment. He also contends that arbitration "cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard," (quoting McDonald v. City of West Branch, Mich., 466 U.S. 284, 290 (1984)), and that as a result, any

arbitrator "determination would not have preclusive effect over the § 1983 claim, and the Court would still retain discretion to hold a hearing on damages."

As for the CBA procedures, plaintiff continues, they "are superfluous and irrelevant in the context of this litigation and the limited purpose of the just cause hearing."   Nor, plaintiff argues, do those procedures work when, as here, "the terminated employee is not a member of the Union and represented by the Union-paid lawyer."   And they should not be used here, he goes on, given that plaintiff would have to pay fees and expenses under § 6.2 of the CBA, and given that defendant failed to follow the processes in them at the time it fired plaintiff.   As to the latter point, plaintiff argues that § 7.8 required the City to provide him with a copy of the dismissal recommendation, "along with the supporting allegations of reasons therefore," and that § 7.5 provides that he would then have had ten business days to select the venue for his hearing—"either before the Civil Service Commission or by a neutral arbitrator."   (Quoting §§ 7.5 and 7.8).   Yet, he argues, it is "uncontested" that the City failed to provide any notice and did not operate a Civil Service Commission.

In reply, defendant again argues that the CBA makes clear that plaintiff's termination "was intended to be resolved through arbitration."   Although defendant concedes that "[t]he clear source of Plaintiff's procedural due process rights are the Constitution and Federal statute," it argues that "[d]etermining whether there was 'just cause' for Plaintiff's termination" is a question of fact that is "separate" from due process liability and that is "derived solely from an interpretation" of "just cause" under the CBA.   Defendant also again contends that plaintiff "is only entitled to the pre-deprivation due process which he would have been entitled to prior to his termination"—arbitration to determine "just cause."   As for waiver, defendant suggests that it

7

did not waive its right to arbitrate here because, although it delayed requesting arbitration, the reason for the delay arose from the fact that the § 1983 liability claim was "not arbitrable." Therefore, defendant suggests, the arbitrable "just cause" issue became relevant only after the court ruled on liability.   Finally, defendant argues that judicial economy and expediency favor arbitration and that plaintiff would not be prejudiced from having to arbitrate the issue.

The court finds that defendant has failed to show that the court must compel arbitration here.   For starters, defendant has not shown that the "just cause" issue is within the scope of the CBA.   The court granted summary judgment for plaintiff as to liability on his claim under § 1983 that he was denied due process, because it was undisputed "that plaintiff received no notice, no statement of reasons, and no opportunity to be heard before he was terminated effective June 2, 2019."  Hawkins, 2025 WL 875210, at *4-8.   But the court did not resolve the issue of remedies for the denial of due process.   See id. at *12.   And remedies are part of—not separate from—the underlying claim.   Cf. West v. Hoy, 126 F.4th 567, 576 (7th Cir. 2025) ("Because a plaintiff's prayer for relief does not comprise a 'claim' under any definition, the district court abused its discretion by entering judgment as to liability, but renouncing supplemental jurisdiction over the remedy."); In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig., 491 F.3d 638, 646 (7th Cir. 2007) ("The eighth claim is purely remedial; it seeks injunctive relief. Of course it is not a claim, that is, a cause of action, and should not have been labeled as such.").

The parties appear to agree here that determining remedies for defendant's due process violation will require an inquiry into whether the City had "just cause" to terminate plaintiff. But they part ways on why that is so: plaintiff suggests that "just cause" is part of the remedies

determination for the constitutional violation; defendant argues that "just cause" "is a question of fact that is derived solely from an interpretation of what is 'just cause' under the [CBA]." The court disagrees with defendant.

Although the CBA discusses terminations for "just cause," the "just cause" here relates to the "causal connection" between the denial of procedural rights and the termination. Fenje v. Feld, No. 01 C 9684, 2002 WL 1160158, at *3 (N.D. Ill. May 29, 2002) ("it is possible to obtain damages for the termination itself if it can be shown both that procedural rights were denied and that such denial had a causal connection with the termination"); see also Patkus v. Sangamon-Cass Consortium, 769 F.2d 1251, 1265 (7th Cir. 1985) (employee was entitled to only nominal damages on her § 1983 due process claim where "there ha[d] been a thorough judicial inquiry into the reasons for [her] dismissal," "[t]he defendants ha[d] presented sufficient evidence to prove that she would have been discharged even if proper pre-deprivation procedures had been employed, and [she] ha[d] presented no proof of particularized injury arising only from the denial of due process"). Defendant at one time recognized this: it argued in its summary judgment briefing that plaintiff failed to show "causation" for damages, and that "[w]hether Plaintiff would still have been terminated if he had been given a pretermination hearing is a material question of fact," and it suggested that the "cause" issue "should be reviewed by a jury." The "just cause" issue is thus part of the remedies issue, which is in turn part of plaintiff's § 1983 due process claim.

The question here, then, is whether that § 1983 statutory claim is within the scope of the CBA. It is not. Courts will enforce an agreement to arbitrate federal statutory claims in a collective bargaining agreement only "so long as the collective bargaining agreement explicitly

states that an employee must resolve his statutory as well as his contractual rights through the grievance procedure delineated in the collective bargaining agreement." Vega v. New Forest Home Cemetery, LLC, 856 F.3d 1130, 1134 (7th Cir. 2017) (discussing 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009), Wright, and other cases). Simply stated, "[t]he language of the agreement in this regard must be clear and unmistakable." Id.

The CBA language here contains no such clear and unmistakable language. Section 6.1 of the CBA explains that "the purpose of th[e] Grievance Procedure [is] to resolve as promptly and as expeditiously as possible any allegations by the Union and/or its members of any misinterpretation of misapplication of the terms of th[e] [CBA]." And it defines "grievance" to "mean an allegation . . . that there has been a violation, misinterpretation or misapplication of any provision of th[e] [CBA], or which involves any disciplinary actions." These provisions do not "suggest that employees must arbitrate statutory [§ 1983] claims, let alone clearly and unmistakably." Castro v. Dart, 483 F. Supp. 3d 564, 572 (N.D. Ill. 2020) (rejecting argument that the plaintiffs' statutory FMLA claims fell within the scope of a CBA's grievance mechanism). Indeed, the CBA does not mention § 1983 at all—much less provide that claims under that statute are subject to the grievance procedures as the sole remedy for violations. See Vega, 856 F.3d at 1135 (distinguishing 14 Penn Plaza, explaining that the contractual language there "explicitly incorporated a variety of statutory anti-discrimination provisions into the agreement and provided that '[a]ll such claims shall be subject to grievance and arbitration procedure . . . as the sole and exclusive remedy for violations'" (quoting 14 Penn Plaza, 556 U.S. at 252)).

10

Because "nothing in the language of the [CBA] clearly and unmistakably requires an employee to resolve a statutory [§ 1983] claim through the grievance procedure," id., plaintiff's 1983 due process claim does not fall within the scope of the CBA. See Conti v. Mayfield Vill., No. 1:19-CV-00591, 2019 WL 4479919, at *2 (N.D. Ohio Sept. 18, 2019) (finding that a CBA's grievance procedures that governed "allegations . . . that there has been a breach, misinterpretation, or improper application of [the CBA], including all disciplinary actions," did not "plainly demonstrate an intent to govern [Plaintiff's § 1983] claim" that alleged a procedural due process violation (brackets in original)), den. recons., 2019 WL 4941837, at *2; Reiff v. Calumet City, No. 10-cv-05486, 2011 WL 494204, at *1-3 (N.D. Ill. Feb. 3, 2011) (finding no clear statement in the CBA at issue there to arbitrate a § 1983 due process claim).

Defendant concedes as much. Defendant states that "the due process claims brought under 42 U.S.C. § 1983 by Plaintiff are not arbitrable" and "may only be decided by judicial determination since they are derived from statute and the Constitution." But it tries to carve out the "just cause" remedies issue from the liability issue, arguing again that "[w]hat is 'just cause' . . . is a question solely derived from the [CBA], i.e., the contract, and is clearly within the purview of the arbitrator." Defendant's effort to pluck "just cause" from the § 1983 claim for purposes of arbitration is unavailing.

As explained above, the "just cause" issue is a remedies issue that is bound up in the § 1983 claim itself. And defendant does not direct the court to a case in which the remedies issues were carved out from the liability issues for arbitration. True, courts in the Ninth Circuit have at least acknowledged the possibility. See Blair v. Rent-A-Ctr., Inc., 928 F.3d 819, 831 (9th Cir. 2019) ("Parties are welcome to agree to split decisionmaking between a court and an arbitrator"

11

by "requiring the arbitrator to adjudicate liability first" and "carv[ing] out only the potential public injunctive remedy" for a court's determination). But "[t]his type of claim-splitting and remedy-splitting" is "inefficient and unusual." Rogers v. Lyft, Inc., 452 F. Supp. 3d 904, 918 (N.D. Cal. 2020). And so, to split "in this way, . . . the parties' agreement must do so precisely." Lag Shot LLC v. Facebook, Inc., 545 F. Supp. 3d 770, 785 (N.D. Cal. 2021). Defendant points to no language in the CBA here that contemplates splitting decisionmaking on liability and remedies between an arbitrator and a court—much less "precisely" so. Thus, even if splitting decisionmaking on a claim were proper in the Seventh Circuit, defendant has not shown that the CBA here permits it.

In short, defendant has not shown that the "just cause" issue is within the scope of the CBA. The court therefore need not compel arbitration based on the CBA.

But even if just cause were within the scope of the CBA, defendant's motion to compel arbitration would fail for another reason: Defendant has waived any contractual right to arbitrate the claim. A party may waive a contractual right to arbitrate implicitly. Halim v. Great Gatsby's Auction Gallery, Inc., 516 F.3d 557, 562 (7th Cir. 2008). To determine if it has done so, courts analyze "whether based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." Id. (citation omitted). As part of that analysis, courts consider several factors: the party's diligence or the lack thereof; its participation in litigation; its delay in requesting arbitration; and its participation in discovery. Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc., 660 F.3d 988, 994 (7th Cir. 2011). Courts may also take into account any prejudice to the party resisting arbitration. Id.

12

Here, defendant has acted inconsistently with the alleged right to arbitrate.   Plaintiff asserts that defendant delayed "nearly four years" after the filing of the complaint before raising the issue of arbitration.   The court notes, though, that the § 1983 claim was not added to the case until the fall of 2023 (through the second amended complaint).   Still, the fact remains: defendant "'dropped a bombshell' by invoking its right to arbitration after significant delay."   Kawasaki, 660 F.3d at 996 (quoting Cabinetree of Wisconsin v. Kraftmaid Cabinetry, 50 F.3d 388, 389 (7th Cir. 1995)).   And defendant's delay is "especially" "inconsistent with the intent to arbitrate" "since the defendant 'never even mention[ed] arbitration until after it lost its motion'" for summary judgment in March 2025.   Id. (quoting St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., Inc., 969 F.2d 585, 589 (7th Cir. 1992)).

Defendant does not dispute that it delayed raising arbitration until after it lost on summary judgment.   It instead attempts to justify its inaction, suggesting that it delayed seeking arbitration because the § 1983 liability claim was "not arbitrable," and so, only after the court ruled on liability did the allegedly arbitrable "just cause" issue become relevant.

But defendant's alleged justification rings hollow here given how defendant litigated matters during summary judgment.   After plaintiff moved for summary judgment on both liability and remedies on its § 1983 due process claim, defendant opposed that motion and affirmatively moved for summary judgment in its favor on the § 1983 claim.   In doing so, defendant asserted in its summary judgment response brief that plaintiff was "not entitled to summary judgment [on damages] since [he] [could not] prove that his termination proximately caused any damages."   "Whether Plaintiff would still have been terminated if he had been given a pretermination hearing," defendant went on, was "a material question of fact."   Yet defendant

13

did not ask the court to send that "question of fact" to an arbitrator. To the contrary, it suggested that the "cause" issue "should be reviewed by a jury." Defendant's actions before the summary judgment ruling thus make clear that defendant "was willing to have the . . . Court decide the merits of its dispute" on causation. Kawasaki, 660 F.3d at 994; see also St. Mary's, 969 F.2d at 589 ("Submitting a case to the district court for decision is not consistent with a desire to arbitrate."). The court finds that based on the totality of circumstances, defendant has waived any right to arbitrate.

Finally, the court rejects defendant's alternative argument that "just cause" cause "needs to be determined by a neutral arbitrator" because plaintiff "is only entitled to the pre-deprivation due process which he would have been entitled to prior to his termination." What plaintiff is entitled to is a judicial determination on remedies for defendant's § 1983 violation. And that includes a judicial determination on whether there was cause for his termination. See Patkus, 769 F.2d at 1265 (explaining that in resolving Patkus's § 1983 claim, "there ha[d] been a thorough judicial inquiry into the reasons for Patkus's dismissal"); see also Brewer v. Chauvin, 938 F.2d 860, 864 n.5 (8th Cir. 1991) (en banc) (explaining in a § 1983 case in which deputy sheriff was fired without pre-termination hearing that "issue of causation is to be made by the trial court after an appropriate evidentiary hearing into the merits of the decision to fire" him, and that the trial court need not "order that a hearing be conducted by the public officials who failed to hold such a hearing in the first place"); Gatlin v. Vill. of Summit, 150 F. Supp. 3d 984, 1002 (N.D. Ill. 2015) (explaining that defendants' contention—that the plaintiff employee whose pre-termination due process rights were violated could recover only nominal damages because "her termination would have been upheld" "even if [she] had been given a hearing"—"involves

14

issues of fact that a jury will have to decide"); <u>Nalls v. Bd. of Trs. of Ill. Cmty. Coll. Dist. No. 508</u>, No. 06 C 3595, 2007 WL 1031155, at *5 (N.D. Ill. Mar. 29, 2007) (denying the defendant's summary judgment motion on the plaintiff employee's § 1983 claim that his pre-termination due process rights were violated, and explaining that the determination of whether his "termination was justified" "suggests that a trial on damages is on the horizon").

## **CONCLUSION**

For the above reasons, defendant's motion to "compel arbitration between the parties on whether there was just cause for Plaintiff's termination and the damages Plaintiff is entitled to for due process violations" [184] is denied. The parties are directed to submit a joint status report by September 18, 2025, proposing a procedure for determining damages and other relief on Counts I and II.

ENTER:

**Robert W. Gettleman**
**United States District Judge**

DATE:     August 29, 2025

15